FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 JAN -8 PM 2:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

BROOKLYND STYNBACH,         }
                            }
    Plaintiff,              }
                            }
v.                          }    CASE NO. CV 95-B-3038-S
                            }
ST. VINCENT'S HOSPITAL,     }
                            }    **ENTERED**
    Defendant.              }

MEMORANDUM OPINION          JAN 8 1996

Currently before the court is defendant St. Vincent's Hospital's Motion for Summary Judgment. After consideration of the record, the submissions of the parties, the argument of counsel and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

Plaintiff has alleged discrimination in violation of 42 U.S.C § 1981 in that he was denied promotion or transfer to various positions because of his race and that he was denied training opportunities because of his race. Defendant has countered plaintiff's contentions by stating that one of plaintiff's claims is time-barred and that plaintiff was not discriminated against on account of his race. Defendant asserts that plaintiff was not promoted or transferred because of legitimate reasons, to wit, that plaintiff either did not apply for the position or was not as qualified for the position as the person who filled the position. Furthermore, defendant asserts that plaintiff was not given training opportunities due to company policy and that the one person who did receive training opportunities denied to plaintiff received them inadvertently.

28

## FACTUAL SUMMARY[1]

Plaintiff, Brooklynd Stynbach,[2] a black male, was hired by defendant, St. Vincent's Hospital ("St. Vincent's"), in its Health Information Systems ("HIS") department in May 1989 as a computer operator. (Pl.'s Dep. at 32.) At some point shortly thereafter, his position came to be known as Computer Operator II. He was placed on the second shift where he worked until he was promoted to System Support Analyst in June 1996. (*See* Munshower[3] Dep. at 26.) In the interim, plaintiff applied for transfer or promotion to a number of positions, including Lead Operator, Recruitment Coordinator, Employment Coordinator, Computer Operator II (day shift), and User Support Analyst II (PC). (Def.'s Ex. 2.) Plaintiff claims that he was discriminatorily denied promotion or transfer to only three positions: Lead Operator in 1992, Computer Operator II (day shift) in 1995, and User Support Analyst I (PC) in 1995. (Plaintiff's Response to Defendant's First Interrogatories ("Interrogatory Response") ¶ 2(a); Munshower Aff. ¶ 6.)

Prior to coming to St. Vincent's, plaintiff worked at the University of Alabama at Birmingham as a "Production Control Operator" from August 1988 to May 1989. (Pl.'s Resume, Pl.'s Ex. 8.) Prior to that job, plaintiff was a data entry clerk at Porter Paint Company in Tucker, Georgia from August 1986 to February 1987. Plaintiff received a bachelor of science degree in Human Resources Management from Birmingham-Southern College in 1994 and an A.A.S. in

---

[1] All reasonable inferences are drawn in the plaintiff's favor.

[2] Plaintiff was formerly known as Arthur W. Morris, (Pl.'s Dep. at 9), but all references to plaintiff in this opinion will be as "plaintiff" or "Stynbach."

[3] Ronald Munshower was the Operations Manager of the HIS department from September 1991 to August 1996. (Munshower Aff. ¶ 2.)

the position because he apparently did not see the posted announcement. (Pl.'s Dep. at 124, 133.) Although plaintiff apparently had applied for such a transfer prior to this position coming open,[8] each transfer request contained the following recitation: "A job Transfer Request must be submitted to the Personnel Department for each job once a notice of Job Vacancy has been posted. Requests will not be accepted for positions which are not presently available." (Def.'s Ex. 2.)

Jerry Crumpton was promoted to the User Support Analyst I (PC) position in late winter or early spring of 1995 as part of a reorganization of the HIS department. (Munshower Aff. ¶¶ 5-6.) Plaintiff did not apply for this position, either, (Interrogatory Response ¶ 2(c)), but defendant has not shown that the position was posted. It appears that the position was not posted because it came open as part of the reorganization. (*See* Munshower Aff. ¶¶ 5-6; Munshower Dep. at 52.)

Jerry Crumpton is a white male who was hired by defendant as a computer operator. As noted above, he was moved to the day shift and then made a user support analyst. Crumpton went to Jefferson State Community College from 1982 to 1985 where he majored in data processing and minored in business administration. (Crumpton Resume, Ex. 3 to Def.'s Supplementary Evidentiary Materials ("Def.'s Supp. Evid.").) He was a computer operator for Central Bank of the South from April 1985 to November 1991 and a computer operator for Associated Grocers of Alabama, Inc. from November 1991 until he was hired by defendant. (Def.'s Supp. Evid. Ex.

---

accepted by the court because it is relevant and useful in resolving the motion for summary judgment and does not unduly prejudice the plaintiff.

[8] Plaintiff asserted that Munshower was aware that plaintiff was interested in transferring to the day shift because they had talked about it before. (Pl.'s Declaration Statement.)

3.) When asked why Crumpton was promoted to user support analyst instead of plaintiff, Munshower stated that Crumpton had demonstrated his "ambition, initiative, and ability." (Munshower Aff. ¶ 6.) Crumpton "voluntarily learned how to fix patient temperature and blood pressure monitors and helped others learn how to do so, voluntarily organized the Department's used equipment, and learned as much as he could about PCS, the network wiring closets, wiring terminals, and other network and PC related tasks." (Munshower Aff. ¶ 6.) Crumpton also had a year of PC experience before coming to work for defendant. (Munshower Aff. ¶ 6.) Crumpton was promoted by Munshower and Jackie Kennedy, who had to approve all promotions, on the recommendation of Munshower. (Munshower Dep. at 41.) According to Munshower, Crumpton was the most qualified person for that job. (Munshower Dep. at 41.)

During the same reorganization that led to the promotion of Crumpton to User Support Analyst I, computer operators Madelyn Petty and Carletter McCree, both black females, were transferred from the night shift to the day shift. (Munshower Dep. at 55; Munshower Aff. ¶ 4-5.) Rick Hindman was also promoted from day shift Computer Operator II to User Support Analyst I as part of this reorganization. (Munshower Aff. ¶ 5.)

Plaintiff has also asserted a claim that he was denied an opportunity to "train"[9] during his days off[10] whereas at least one white employee was allowed an opportunity for such training. Plaintiff requested such an opportunity to come in and train on his days off. After consulting with

---

[9] The training plaintiff sought was really an opportunity to come into work during his days off and "go out with the Network group" to get hands-on experience that he could not get at the position he held at the time. (Pl.'s Dep. at 41.) No evidence was presented that plaintiff requested and was denied any sort of formal training offered by St. Vincent's.

[10] Computer operators work a "7 on/7 off schedule." (*See* Munshower Aff. ¶ 5.)

5

Jackie Kennedy, Ron Munshower denied plaintiff's request because of concerns related to wage and salary rules, (Munshower Dep. at 30), or workers' compensation rules and liability. (Pl.'s Dep. at 42.) Ricky Little[11] also requested and was denied an opportunity to come in and train on his days off. (Munshower Dep. at 64-65.)

Wayne Walker,[12] a white male, apparently did come in to train during his off days on three separate occasions for four hours each. (Walker Dep. at 10.) Walker did not ask for permission to do so, however, (*see* Munshower Dep. at 64),[13] and did not come in again after being seen by Munshower training during his off time. (Pl.'s Dep. at 43-44.) Munshower was not aware that Walker was coming in for training during his off time until Munshower saw Walker with Ricky Little while Munshower was bringing his wife to the Cancer Center for chemotherapy. (Munshower Aff. ¶ 8.) Although Munshower did not tell Walker at the time that he was violating work rules, Munshower never again saw Walker in during Walker's off time. (Munshower Aff. ¶ 8.) As Munshower put it, "the issue never came up again." (Munshower Aff. ¶ 8.) Walker did not receive any sort of transfer or promotion based on this training that he received. (Walker Dep. at 15.)

---

[11] Ricky Little, a white male, is a User Support Analyst II at St. Vincent's. (Little Dep. at 8.)

[12] Wayne Walker has been a Computer Operator II at St. Vincent's since February 1995. (Walker Dep. at 7.)

[13] Plaintiff stated in his deposition that Walker told plaintiff that Walker was being allowed to come in during his off time for training and that Munshower had encouraged Walker to do so. (Pl.'s Dep. at 43.) These statements are hearsay and are not due to be considered in deciding a motion for summary judgment. Furthermore, Wayne Walker's deposition was taken, and excerpts of this deposition were submitted to the court by the defendant. Plaintiff did not submit any excerpt of Walker's deposition or any other evidence from Walker that Walker had asked for and received permission to train during his off days.

Finally, Munshower admitted in his deposition that as recently as three months prior to his deposition he had used the word "nigger" in reference to blacks. (Munshower Dep. at 8.) The context in which he used the term was apparently in anger or frustration at cars playing loud music on the street outside his house. (Munshower Dep. at 8-9.) When asked if he had ever used that term in the workplace, however, he responded "never." (Munshower Dep. at 22.) No other evidence regarding Munshower's use of the word "nigger" or other racial slurs was presented to the court.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

Plaintiff has asserted claims based on four actions by the defendant. He claims that he was discriminated against by not receiving promotion or transfer to three different positions: Lead Operator in 1992, Computer Operator II (day shift) in 1995 and User Support Analyst I in 1995. He also asserts that he was denied training opportunities that were given to at least one other employee.

Plaintiff's claim regarding his not being promoted to Lead Operator in 1992 is barred by the statute of limitations. The appropriate limitations period for a § 1981 claim is the period applicable to a personal injury claim under state law in the state where the claim is brought. *See Baker v. Gulf & Western Industries, Inc.*, 850 F.2d 1480, 1482 (11th Cir. 1988) (citation omitted). Under Alabama law, the statute of limitations for an action based on personal injury

8

is two years. Ala. Code § 6-2-38(*l*) (1993). Thus, the statute of limitations applicable to plaintiff's § 1981 claim is two years. Because the Lead Operator position was given to William Holler on October 5, 1992, and plaintiff waited until November 1995 to file this lawsuit, plaintiff's claim based on the Lead Operator position is time barred.[14]

### I. The Legal Standard Under 42 U.S.C. § 1981

As an initial note, although plaintiff has introduced evidence that Ron Munshower has used racial slurs, plaintiff has not produced any direct evidence of discrimination. As Justice O'Connor wrote: "stray remarks in the workplace, while perhaps probative of [discrimination], cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or **statements by decisionmakers unrelated to the decisional process itself**, suffice to satisfy the plaintiff's burden in this regard." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (emphasis added) (citation omitted); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1116 (7th Cir. 1992) (quoting *Price Waterhouse*, 490 U.S. at 277 (O'Connor, J., concurring)). In the case at bar, Munshower was a decisionmaker, but his remarks showing racial animus were not related to the decisional process itself. Thus, plaintiff has not presented direct evidence of discrimination, and plaintiff must proceed by attempting to establish his case through circumstantial evidence.

Plaintiff has brought these claims under 42 U.S.C. § 1981 (1994). The test for intentional discrimination under § 1981 is the same as the test formulated for Title VII disparate treatment cases. *See Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994); *Brown v. American Honda*

---

[14] Plaintiff's counsel conceded this claim at oral argument on the motion for summary judgment.

*Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992). In the absence of direct evidence of discrimination, a plaintiff must establish the existence of intentional discrimination using circumstantial evidence under the familiar *McDonnell Douglas* framework based on the Supreme Court's decisions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See Howard*, 32 F.3d at 524. Under this framework, plaintiff must first establish a prima facie case of discrimination. If the plaintiff is successful in so doing, the defendant may then articulate legitimate, non-discriminatory reasons for its actions. If the defendant articulates such reasons, in order to survive a motion for summary judgment the plaintiff must then demonstrate that race and not the reasons proffered by the defendant actually motivated the employment decision. *See id.* at 524-25.

In order to establish a prima facie case of discrimination, the plaintiff must show that he is a member of a protected group, that he was qualified for and applied for a transfer or promotion (or sought training), that he was denied that transfer or promotion (or training), and that the transfer or promotion (or training) was given to someone outside the protected group. *See id.* at 524; *Brown*, 939 F.2d at 949. The plaintiff's burden in establishing a prima facie case is typically light. *See Howard*, 32 F.3d at 524. If the plaintiff is successful in establishing his prima facie case, he creates a presumption of intentional racial discrimination. *Id.*

To rebut the plaintiff's prima facie case, the defendant must "articulat[e] a legitimate, non-discriminatory reason" for its action or decision. *Id.* The defendant's burden is one of production, not persuasion. *Brown*, 939 F.2d at 949. This burden, like the plaintiff's burden to establish the prima facie case, "is easily fulfilled." *Howard*, 32 F.3d at 524. Once the defendant has articulated such a reason, the presumption of intentional discrimination is defeated. *Id.* at

525.

If the defendant defeats the plaintiff's prima facie case and the presumption of discrimination, the plaintiff must demonstrate that the defendant's proffered reasons are merely a pretext for discriminatory reasons and that race was the real reason for the defendant's action or decision. *Howard*, 32 F.3d at 525; *Brown*, 939 F.2d at 949-50. In order to survive summary judgment, the plaintiff need only "demonstrate that a genuine question exists as to whether the reason for the decision was intentional discrimination." *Howard*, 32 F.3d at 525. Evidence of intentional discrimination is all that is needed to defeat summary judgment, but the plaintiff must do more than establish a prima facie case and then deny the credibility of defendant's witnesses. *Id.* at 525-26 (citation omitted). "Under *St. Mary's*, a plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable. Such evidence may consist of a defendant's inconsistent statements." *Id.* at 526 (interpreting *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2749 (1993)).

**II. Application of the Standard**

A. Computer Operator II (day shift) Position

Plaintiff has not established a prima facie case of discrimination with regard to his not being transferred to the Computer Operator II (day shift) position. The uncontroverted evidence is that plaintiff did not apply for this position and that Jerry Crumpton was the only applicant for this position. As noted above, a requirement for establishing a prima facie case is that the plaintiff was qualified for **and applied** for the position. Plaintiff has not introduced evidence that he applied for the position, that the position was not posted, that the position was posted only on days

11

on which plaintiff did not work, or that the defendant in any way intentionally excluded plaintiff from applying for the transfer. In fact, the defendant demonstrated that the vacancy notice was posted on days on which the plaintiff worked. The plaintiff, therefore, had an opportunity to see the notice and apply for the position but did not do so.

Plaintiff argues that defendant should have considered him for the position even though he did not apply for the position. His argument is that he had applied for such a transfer in the past and should have been considered this time, as well. Defendant had a procedure in place, however, that specifically stated that an applicant must apply for each position desired as it became vacant and that applications placed before a position became vacant would not be considered for such a position. Plaintiff has introduced no evidence that this procedure was not followed or that it was applied in any way in a discriminatory fashion.

Plaintiff cites two cases in his brief for the proposition that a plaintiff can establish a prima facie case even though he did not apply for a position where the plaintiff can demonstrate that the employer had some duty to consider him for the position in question. Plaintiff's reliance on these cases is misplaced.

The first case cited by the plaintiff, *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793 (11th Cir.), *modified on other grounds*, 850 F.2d 1551 (11th Cir. 1988), is distinguishable from the case at bar. *Roberts* stated: "[W]hen the failure to promote arises out of an informal, secretive selection process, as the District Court found occurred in the case at bar, a plaintiff may raise an inference of intentional, racially-disparate treatment without proving that he technically applied for, and failed to obtain, the promotion." *Id.* at 797 (citation omitted). In the present case, the plaintiff has made no showing that the selection process was either informal or secretive. In fact,

12

the evidence shows that the selection process was based on a formal posting and application procedure that is well established at St. Vincent's. Plaintiff has used this procedure numerous times and has made no showing that the procedure itself was in any way discriminatory.

Plaintiff also cites *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir.), *cert. denied*, 479 U.S. 883 (1986), for the proposition that in some cases actually applying for the job is not a requirement for establishing a prima facie case. In *Cox*, the Eleventh Circuit quoted *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984) and held that an employer had a duty to consider all people it was on notice "might reasonably be interested" in the position. *Cox*, 784 F.2d at 1560. The passage quoted from *Carmichael* stated:

> "[W]hen there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested as well as those who have learned of the job opening and expressed an interest. Accordingly, a plaintiff makes out a prima facie case--that is, he creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection--as long as he establishes that the company had some reason or duty to consider him for the post."

*Cox*, 784 F.2d at 1560 (quoting *Carmichael*, 738 F.2d at 1133). The first sentence of this passage points to the reason that neither *Cox* nor *Carmichael* is applicable to the present case. Both *Cox* and *Carmichael* are distinguishable because both cases involved informal application procedures. In the case at bar, however, the defendant has shown that it had a formal posting and application procedure with which the plaintiff was familiar and that the plaintiff had used this procedure numerous times. Thus, St. Vincent's was **not** on notice that plaintiff was interested and did **not** have "some reason or duty to consider" plaintiff for the position because the plaintiff did not apply for the position.

13

Because plaintiff did not apply for the Computer Operator II (day shift) position, he has not established a prima facie case of discrimination. Therefore, the defendant is entitled to summary judgment on this claim.

B. User Support Analyst I Position

Jerry Crumpton, who was given the day shift Computer Operator II position discussed above, was promoted to User Support Analyst I as part of a reorganization of the HIS department at St. Vincent's. At the same time that Crumpton was promoted, another day shift Computer Operator II, Rick Hindman was also promoted to User Support Analyst I. To fill the computer operator vacancies left by these promotions, two black females, Madelyn Petty and Carletter McCree were transferred to the day shift.

In its brief, defendant essentially concedes that plaintiff could make out a prima facie case of discrimination with regard to the User Support Analyst I position. The court will assume, therefore, that plaintiff could establish a prima facie case. The only difficulty plaintiff might have would be showing that he applied for the position. Because the defendant has not produced evidence that the position was posted, the court will assume that the plaintiff need not show that he applied to establish a prima facie case for this claim.

Even assuming that the plaintiff has established a prima facie case, however, defendant has stated legitimate, non-discriminatory reasons for its action. Primarily, defendant asserts that plaintiff was not as qualified for the position as Crumpton because Crumpton had more PC experience and more overall experience. Defendant also points to Munshower's conclusion that Crumpton was more ambitious and hard-working than plaintiff. These reasons are sufficient to rebut plaintiff's prima facie case.

14

Plaintiff has not offered evidence of pretext to refute defendant's stated reasons. Even if the plaintiff were to offer evidence that plaintiff was more qualified, as the Eleventh Circuit stated in *Brown*, "[t]o rebut plaintiff's prima facie case, the defendant need not demonstrate that the individual . . . selected was actually more qualified than the plaintiff, rather it must only show that it had a legitimate, nondiscriminatory reason for its action." *Brown*, 939 F.2d at 953 (citation omitted). Plaintiff, however, has not even offered such evidence.

At oral argument, in fact, plaintiff's counsel conceded that Crumpton was more qualified than plaintiff and that plaintiff did not really have a separate claim based on the failure to promote him to User Support Analyst I in 1995. Under the plaintiff's theory expressed during argument on defendant's motion for summary judgment, the user support analyst position would be claimed as part of plaintiff's damages if plaintiff succeeded on his claim that defendant discriminated on the basis of plaintiff's race in failing to transfer him to the day shift as a computer operator. Plaintiff does not have any damages to prove, however, because he failed to state a claim of discrimination with regard to the day shift computer operator position.

Plaintiff has failed to offer evidence from which a reasonable jury could find that defendant's stated reasons for the challenged decision were a pretext for illegal discrimination. Therefore, defendant is entitled to judgment as a matter of law on plaintiff's claim regarding the User Support Analyst I position.

C. Training

As noted above, plaintiff has also asserted a claim that he was denied training opportunities that were given to another employee. As an initial point with regard to this claim, plaintiff has not produced any evidence of how he was damaged because he did not receive training

opportunities given to another employee. The evidence shows that Walker, the only employee who did train, is still a Computer Operator II and has not been transferred or promoted since his he had his training. Therefore, plaintiff cannot show that he has been harmed by not receiving training. For purposes of defendant's motion for summary judgment, however, the court will assume that plaintiff might state a claim based on a lack of training even though he has not shown any disadvantage or damage based on that lack of training.

Even after making this assumption, the court is of the opinion that plaintiff has not met his burden of establishing a case of intentional discrimination with regard to this claim. A variation of the *McDonnell Douglas* framework in this context would require the plaintiff to show that he was a member of a protected class, that he requested and was denied an opportunity to train, and that similarly situated persons outside the protected class were granted the opportunity that plaintiff was denied. Under this analysis, plaintiff cannot establish a prima facie case of discrimination with regard to his claim. Plaintiff is a member of a protected class, and he did request and was denied an opportunity to train on his days off, but plaintiff cannot satisfy the last prong of the prima facie case. The evidence shows that the only other employee to make such a request for training, Ricky Little, was a white employee whose request was also denied.

Plaintiff argues that he can establish a prima facie case of discrimination because Wayne Walker, a white computer operator, did come into work to train on his days off on three separate occasions. Walker did not request permission to train before doing so. He just came in and trained. The undisputed evidence shows, however, that Walker did not come for training any more after being seen training by Munshower. The fact that Munshower did not specifically tell Walker to leave when he saw him training is not dispositive of this issue. What is dispositive is

16

that every person who asked was denied permission, and the one person who acted without permission stopped training once he was discovered. Therefore, plaintiff has not shown that he was treated any differently than similarly situated white employees.

Assuming, *arguendo*, that plaintiff did establish a prima facie case of discrimination on the training issue, defendant is still entitled to summary judgment on this issue. After plaintiff made his request to train, defendant determined that because of liability or workers' compensation concerns, or both, it would not allow such "off-day" training. Defendant asserts that this is a legitimate, non-discriminatory reason for its denial of plaintiff's request. The court is of the opinion that defendant has met its burden of articulating a legitimate reason for its actions. Plaintiff, however, has not offered evidence of pretext. First, Munshower's admitted use of the word "nigger" at his house does not satisfy plaintiff's burden in this regard. As noted above, "a plaintiff withstands summary [judgment] by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard*, 32 F.3d at 526. Munshower's admitted use of racial slurs at home is not sufficient to call defendant's stated reasons into question. Furthermore, although Walker did train for a total of twelve hours on his days off, Walker did not train any more after being seen training by Munshower. Walker was seen training on only one occasion by Munshower who was with his wife for a visit to the cancer center. Finally, as noted above, Ricky Little was denied the opportunity to train after making a request similar to plaintiff's. Thus, as discussed above, the defendant has shown that the only person who did train on his days off was doing so without permission and that all employees, including a white employee, who asked for permission had their requests denied. As the Eleventh Circuit has noted, "[i]t is difficult to hold that a practice

17

which affects applicants of all races in the same manner is actually designed to conceal a racially discriminatory motive." *Brown*, 939 F.2d at 952 (citation omitted). Plaintiff has not refuted defendant's evidence or raised a material question of fact with regard to defendant's stated reasons. Plaintiff, therefore, has not met his burden of showing pretext on the part of the defendant. Accordingly, defendant is entitled to summary judgment on plaintiff's discrimination claim based on the denial of training.

## CONCLUSION

For the reasons stated above, plaintiff has raised no genuine issue of material fact with regard to his claims, and defendant is entitled to judgment as a matter of law. Therefore, the court is of the opinion that defendant's motion for summary judgment is due to be granted.

An order granting defendant's motion for summary judgment in accordance with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 8th of January, 1997.

_Sharon Lovelace Blackburn_
**SHARON LOVELACE BLACKBURN**
United States District Judge